UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   26-80012-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ARTEM KASHPUR,

    Defendant.

_____:

### DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AT DE 44

Defendant, Artem Kashpur, through undersigned counsel, objects to the presentence investigation report at DE 44 and states as follows:

### FACTUAL CORRECTIONS

1. **At ¶ 4,** The Plea Agreement does not state that the "parties" will recommend a sentence at the low-end of the guidelines. Pursuant to paragraph 7 of the Plea Agreement, DE 36, only the government is obligated to recommend a sentence at the low-end of the guidelines. This language permits Mr. Kashpur to seek a downward variance, if he believes such a request is appropriate to make of the Court.

2. **At ¶ 93,** Mr. Kashpur's mother's husband's name is Andrey, which is spelled correctly in paragraph 91.

3. **At ¶ 98,** Mr. Kashpur first came to the United States in 2019.

1

## LEGAL OBJECTIONS

**I.    At ¶ 69, Mr. Kashpur objects to not receiving a reduction for minimal or minor role pursuant to U.S.S.G. § 3B1.2 and requests this Court impose a 4-level or 3-level minor role reduction.**

The facts of paragraph 69 are correct and relevant:

Artem Kashpur was recruited to serve as the nominee owner of health care entities. He formed Kashpur Management, a holding company, and through that company, the defendant falsely represented that he purchased West Lake and 360 DME for $75,000 each. At all times, Kashpur knew that he did not have any actual ownership or control of West Lake or 360 DME. However, he then opened bank accounts on behalf of West Lake and 360 DME. He turned over his banking information, including log in information and password for these accounts to the members of the organization. The organization then used these accounts to launder $14,578,299 in proceeds from unlawful activity, health care fraud and wire fraud, which was then transferred to financial accounts in Hong Kong. The defendant received $102,702 for his participation in this scheme.

In other words, Mr. Kashpur received approximately 0.7045% (less than 1%) of the scheme's laundered money. *See* https://www.calculator.net/percent-calculator.html. It's also clear from the Factual Proffer that Mr. Kashpur was recruited into this conspiracy by other individuals who knew the full scope and purpose of the conspiracy. *See generally* DE 37. It was solely the co-conspirators who procured patient information, procured doctors (or doctors prescribing details), and who submitted false and fraudulent claims to Medicare. *See id.* There is no evidence that Mr. Kashpur even knew the entities were billing Medicare for continuous glucose monitors. And, since he handed over the bank information to the leaders and organizers, Mr. Kashpur did not know that this fraud involved millions of dollars. In summary, Mr. Kashpur's knowledge about the scheme was extremely limited, and

his involvement was, in essence, purchasing two purported healthcare business and opening related corporate bank accounts for each company and then handing over the ownership to conspirators.

Application note 3(A) is instructive:

Likewise, a defendant who is accountable under §1B1.3 for a loss amount under §2B1.1 (Theft, Property Destruction, and Fraud) that greatly exceeds the defendant's personal gain from a fraud offense or who had limited knowledge of the scope of the scheme may receive an adjustment under this guideline. **For example, a defendant in a health care fraud scheme, whose participation in the scheme was limited to serving as a nominee owner and who received little personal gain relative to the loss amount, may receive an adjustment under this guideline.**

U.S.S.G. § 3B1.2, n. (3)(A) (emphasis added).

Additionally, application note 3(C), which outlines factors for this Court to consider, states in relevant part:

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i)      the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)      the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)      the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)      the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)      the degree to which the defendant stood to benefit from the criminal activity.

> A defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

U.S.S.G. § 3B1.2, n. 3(C), see also *United States v. Broussard*, 882 F.3d 104, 111 (5th Cir. 2018) ("A 'minimal participant' is someone who lacks knowledge or understanding about the scope or structure of the enterprise; a 'minor participant' is someone who is less culpable than most participants but more culpable than a minimal participant." (citations omitted)). Mr. Kashpur submits that the agreed upon facts support a finding for a minimal role reduction, as he lacked both knowledge and understanding about the scope and structure of the enterprise.

While the minor role reductions require less culpability than the average participant in the actual case (and not other cases), undersigned counsel submits that the following cases are useful when determining a role reduction, and notably, minor role was granted in these cases before the change in the application notes that specifically discusses health care fraud nominee owners. *See United States v. Wright*, 862 F.3d 1265, 1278 (11th Cir. 2017) (district court must "determine that the defendant was less culpable than most other participants in her relevant conduct" (citations omitted)). These are cases where undersigned counsel has personally represented defendants who received a minor role reduction in a healthcare fraud conspiracy:

In *United States v. Christopher Fuller*, 18-CR-80111-ROSENBERG, the government agreed that a sober home patient recruiter, who was paid kickbacks for patients brought to the sober home (where fraudulent billing took place) was entitled to a 2-level minor role reduction and a 2-level downward variance to "to avoid unwarranted sentencing disparities with similarly situated Defendants due to the amount of loss in this matter." DE 240 ¶ 8 (e) and (f). In total, the government agreed to a 4-level reduction.

In *United States v. Kenneth Scott,* 19-80223-CR-MARRA, the government agreed to "[t]hat the defendant receive a minor role reduction of 2 levels, pursuant to Section 3B1.2." DE 45 ¶ 7(c). In that case, Mr. Scott process inventory orders for the VA using a government credit card. According to the factual proffer, "At some point in time, the defendant became aware that orders being requested by certain co-workers, and which involved particular vendors, were of questionable legitimacy. In fact, the defendant began receiving small amounts of cash ($50- $100) from a co-defendant for placing these orders with designated vendors. The defendant continued to do this from at least January 2016 through December 2017."

In *United States v. Pamela Edwin,* 19-80169-CR-ROSENBERG, the Court granted a 3-level minor role reduction, over the government's objection, to Ms. Edwin who acted as the office manager of the company submitting fraudulent prescriptions for durable medical equipment. DE 177 ¶ 2. As part of her duties as office manager, Ms. Edwin's job would prefill prescriptions and follow-up with doctors to ensure that they signed prescriptions, even when they did not evaluate patients first to determine

if they were medically needed.

While co-defendants were charged in a formal conspiracy in the above named cases, charged or convicted co-conspirators is not a requirement for the Court to make a finding that minor role is appropriate. USSG §3B1.1, comment. (n.1); see also *United States v. Burris*, 22 F.4th 781, 787 (8th Cir. 2022) (district court did not err in finding an acquitted co-defendant was a participant); *United States v. Ford*, 987 F.3d 1210, 1214 (8th Cir. 2021) (district court's finding that defendant's organization included more than five participants was supported by the record); *United States v. Guzman*, 926 F.3d 991, 1003 (8th Cir. 2019) ("[A]n individual need not be guilty of the precise offense of conviction—or even charged—to be found 'criminally responsible' under §3B1.1." (citations omitted)); *United States v. Fluker*, 698 F.3d 988, 1002 (7th Cir. 2012) ("We have explained that this means a participant 'could have been charged,' even if only as an accessory; but 'mere knowledge of a conspiracy' is insufficient to establish that a person was 'criminally responsible.'" (citation and emphasis omitted).

It is no fault of Mr. Kashpur's that the government has not yet arrested the sophisticated organizers who set him up to be the public fall guy for this conspiracy. Still, the Court should evaluate Mr. Kashpur's involvement compared to the others who organized this scheme, who recruited others into the scheme, who procured private medical information from patients, who authored fraudulent medical claims, who either recruited doctors or stole their prescription authorization numbers, and who benefited hundreds and thousands of dollars from this scheme. Mr. Kashpur's

6

involvement was that of a nominal owner and the guidelines specifically call for the Court to reduce his offense level as a minimal or minor participant.

**II.    This Court should consider the new proposed loss amount guidelines and apply them to Mr. Kashpur's case**

On November 1, it is anticipated that the new prelimarily 2026 Sentencing Guideline Amendments will take effect. *See* [Preliminary 2026 Reader-Friendly Amendments to the Federal Sentencing Guidelines](). The new proposals would take into consideration inflation since 2015 and modify the loss table in §2B1.1 (Theft, Property Destruction, and Fraud) accordingly. If applied to Mr. Kashpur's case, the loss amount would be reduced by two levels. Undersigned counsel acknowledges that this guideline is not yet in effect and will also be making a separate, unopposed motion of the Court to continue sentencing until after November 1, 2026.

WHEREFORE, Defendant requests this Court to grant the above-styled factual and legal objections to the presentence investigation report.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*s/ Kristy Militello*
Kristy Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0056366
250 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
(561) 833-6288 - Telephone
Kristy_Militello@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2026, electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Kristy Militello*
Kristy Militello

8